UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: ) | |
| ) | |
| WADE MARTIN ROME & KATHLEEN ) | Case no. 6:15-bk-02498-KSJ |
| MOLONEY ROME, ) | |
| ) | Chapter 7 |
| Debtors. ) | |
| ) | |
| ) | |
| GUY G. GEBHARDT, ) | Adv. No.: 6:15-ap-00130-KSJ |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| WADE MARTIN ROME & ) | |
| ) | |
| KATHLEEN MOLONEY ROME, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

**MEMORANDUM OF LAW IN SUPPORT OF ACTING
UNITED STATES TRUSTEE'S COMPLAINT TO DENY DISCHARGE**

NOW COMES the Acting United States Trustee for Region 21, Guy Gebhardt, ("Plaintiff" or "UST") and files this Memorandum of Law in support of the UST's complaint to deny the discharge of Wade Martin Rome and Kathleen Moloney Rome (collectively "Defendants"). In support of the complaint to deny discharge, the UST states as follows:

**SUMMARY OF ARGUMENT**

1. In the recent past, the Defendants had property of considerable value. The Defendants received $1,142,697.59 in a joint bank account in October 15, 2012 as the proceeds of an employment lawsuit, of which at least $577,152 was converted into precious metals. In addition, the Defendants recently had a warehouse full of valuables, including antique furniture. Yet, on

1

their bankruptcy Schedules, the Defendants do not list any of these assets. The evidence presented during the six-day trial conducted in this matter shows that, as of the petition date of March 23, 2015, ("Petition Date") the Defendants were concealing property of considerable value. In addition, the evidence showed that the Defendants did not have sufficient records and did not have a sufficient explanation for their supposed loss of assets. For these reasons, the Defendants' bankruptcy discharge should be denied pursuant to 11 U.S.C. § 727(a)(2), (3), (4) and (5).

## LAW AND ARGUMENT

### A.    Defendants' Discharge Should be Denied Pursuant to Section 727(a)(2)(B)

2.  Count I of the complaint objects to Defendants' discharge pursuant to 11 U.S.C. § 727(a)(2)(B). Section 727(a)(2)(B) provides that "[t]he court shall grant the debtor a discharge, unless . . . the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed . . . property of the estate, after the date of the filing of the petition."

3.  "To establish a claim under § 727(a)(2)(B), a plaintiff must show that (1) there was a concealment, (2) after the filing date of the petition, (3) of property of the estate, (4) by the debtor with the intent to hinder, delay, or defraud his creditors." In re Unger, 333 B.R. 461, 470 (Bankr. M.D. Fla. 2005) (citing In re Johnson, 301 B.R. 590, 596 (Bankr. N.D. Ala. 2003)).

4.  At trial, the UST met the burden of showing the Defendants' post-petition concealment of property of the estate with the intent to hinder, delay and defraud creditors. Specifically, the UST met its burden with regard to the concealment of miscellaneous personal property, including furniture, the concealment of precious metals, and the concealment of the Defendants' ownership in vehicles.

5. The UST has met its burden of showing the Defendants' post-petition concealment of miscellaneous personal property, including furniture. According to the testimony of Sandy Trudeau, Wade Rome admitted to this conduct. Approximately four months after the Petition Date in July 2015, Ms. Trudeau asked Wade Rome whether he had hidden his assets. Wade Rome replied "No! No!", while nodding his head vigorously to indicate that he was not being truthful. (Sandy Trudeau testimony 6/14/17) Wade Rome also bragged that Kathleen Rome played the role of the "good housewife" during her testimony at the section 341 meeting. (Sandy Trudeau testimony 6/14/17).

6. This admission is supported by Ms. Trudeau's testimony that (in her quest to retrieve her stolen ladder) Wade Rome brought her to a warehouse full of personal property and that Wade Rome identified himself as the owner of the property. (Sandy Trudeau testimony 6/14/17). This admission is also supported by the testimony of Terry Brown, who testified that, at the time they moved in, the Defendants had sufficient personal property to fill an 18-wheeler and moved many loads of personal property out of their house at times relevant to the bankruptcy filing (Terry Brown testimony 6/12/17).

7. The UST has met the burden of showing the Defendants' post-petition concealment of precious metals with intent to defraud creditors. On direct examination by the UST, Ms. Trudeau testified that she was presented with gold coins for payment of rent in May 2015 two months after the Petition Date (Sandy Trudeau testimony 6/14/17). She testified that, also in May 2015, she was offered a bag of mixed silver (Sandy Trudeau testimony 6/14/17). She also testified that in May 2015, Wade Rome offered her a single, round gold coin (Sandy Trudeau testimony 6/14/17). According the Defendants' Schedules, the Defendants had no possibility of purchasing these items within two months post-petition because they had no income. None of these items are listed on Defendants' schedules. Given the obvious value of precious metals to the bankruptcy estate, and

the creditors' keen interest in locating these precious metals, Defendants' intent to defraud the estate is apparent. The Defendants' course of conduct regarding the safes in their home also provides circumstantial evidence of the Defendants' concealment of precious metals. The listing of safes on the Defendants' schedules was incomplete, disclosing only their son's safe on the Statement of Financial Affairs. The chapter 7 trustee testified that initial photographs provided by the Defendants did not disclose all safes in the home (Carla Musselmann testimony 2/22/17), and when the chapter 7 trustee conducted her inspection, the Defendants refused to open all of the safes in the home (Carla Musselmann testimony 2/22/17).

8. Ms. Trudeau was credible in her testimony despite the impeachment evidence offered by the Defendants. Ms. Trudeau frankly admitted that she took a homestead exemption for which she was not eligible, and compounded her mistake by insuring and financing her property as owner-occupied (Sandy Trudeau testimony 6/14/17). However, the Court should view Ms. Trudeau as a credible witness for at least the following reasons: (1) her demeanor was forthright and credible; (2) she gave testimony despite the fact that she credibly believed that Wade Rome would never pay her (i.e., she had nothing to gain); (3) she gave testimony despite her reasonable belief that Mr. Rome was an intimidating person, as evidenced by his mixed martial arts background, carrying of firearms, and ownership of aggressive dogs; (4) she gave testimony despite her reasonable belief that Wade Rome would use negative information about her to her detriment (i.e., she had something to lose); and (5) other witnesses, such as Mr. Brown and the chapter 7 trustee tended to tell a similar story.

9. Finally, the UST has met the burden of showing the Defendants' post-petition concealment of the ownership of the Honda Odyssey driven by Kathleen Rome. When the chapter 7 trustee obtained access to the glove box of the Odyssey, the chapter 7 trustee discovered a title which indicated that indicated that the vehicle was purchased in 2010 by the entity B&H Auto Sales,

LLC, despite the fact that B&H Auto Sales LLC did not yet exist and did not yet have a dealer license (Carla Mussellman testimony 2/22/17; Exhibits 102, 132(B), and 132(C)). Also discovered in the vehicle was what appeared to be a 2014 motor vehicle dealer license apparently issued to B&H Auto Sales LLC, but after the actual B&H Auto Sales LLC ceased to have a dealer license (Carla Musslemann testimony 2/22/17; Exhibits 102, 132(B), and 132(C)). Also discovered on the back of the vehicle was a license plate issued to B&H Auto Sales LLC with a 2015 sticker, despite the fact that the State of Missouri does not issue license plate stickers to dealers and despite the fact that B&H Auto Sales LLC no longer had a dealer license in 2015 (Carla Musslemann testimony 2/22/17; Exhibits 102, 132(B), and 132(C)). By the time of trial, the Defendants were still driving on Missouri drivers licenses. Testimony also established that Wade Rome had a history of manipulating titles to vehicles. Wade Rome had a habit of concealing his ownership in vehicles by failing to sign vehicles' titles and subsequently selling them, thus creating the illusion in the chain of title that he never owned them at all. This was described in testimony as the illegal practice of "curbstoning", "jumping title" or dealing in vehicles with "open titles." (George Boomer testimony, 6/12/17). This is strong circumstantial evidence of the Defendants' fraudulent intent to conceal their ownership of the Odyssey from the many creditors suing the Defendants as listed on the Defendants Statement of Financial Affairs.

 10. Kathleen Rome was culpable in the Defendants' concealment of assets. She signed the bankruptcy Schedules. With regard to miscellaneous personal property, she testified that she had access to her own house and was familiar with its contents (Kathleen Rome testimony 2/22/17). With regard to precious metals, she testified in the UST's direct examination that she was a joint owner of the precious metals and she slept on a mattress under which the Defendants stored their gold (Kathleen Rome testimony 2/22/17). With regard to the vehicle, she drove the vehicle and would have been familiar with the registration, driver's license and license plates. She also spent

approximately $4,000 fixing the vehicle while in Nebraska (Kathleen Rome testimony 2/22/17). In addition, Ms. Rome was not unsophisticated. She has two years of post-secondary education and had a managerial role in the Defendants' business interests and was a signatory on Defendants' business accounts (Kathleen Rome testimony 2/22/17, Exhibits 88 to 98).

**B.     Defendants' Discharge Should be Denied Pursuant to Section 727(a)(3)**

11. Count II of the complaint objects to Defendants' discharge pursuant to 11 U.S.C. § 727(a)(3). Section 727(a)(3) provides that "[t]he court shall deny the debtor a discharge unless . . . the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."

12. To make a prima facie case under § 727(a)(3), the UST must prove that "(1) either that the debtor failed to keep or preserve any recorded information, or that he destroyed, mutilated, falsified, or concealed recorded information, and (2) that it is impossible to ascertain the financial condition of the debtor as a result of the debtor's conduct." In re Rancourt, No. 6:11-ap-00233-KSJ, 2014 WL 504082, at *3 (Bankr. M.D. Fla. Feb. 7, 2014) (citing In re Fasolak, 381 B.R. 781, 790 (Bankr. M.D. Fla. 2007)). "If moving under the 'failed to keep or preserve information' prong, the creditor first must make a showing of inadequate or incomplete records; then, the burden of proof shifts to the debtors to justify the inadequacy or nonexistence of records." Rancourt, at *3 (citing In re Canava, 550 F.3d 755, 761 (7th Cir. 2008)). "The focus of § 727(a)(3) is on the debtor's presentation of an accurate and complete account of his financial affairs." Rancourt, at *3 (citing Fasolak, 381 B.R. at 790).

13. The UST met the initial burden of showing that the Defendants did not keep adequate or complete information regarding the disposition of precious metals purchased from the Tulving

6

Company. The Defendants purchased at least $577,152 in precious metals from the Tulving Company. The precious metals were jointly owned (Kathleen Rome testimony 2/22/17). In his testimony, Wade Rome admitted that there were no records regarding transactions involving precious metals.[1] (Wade Rome testimony 2/21/17). A survey of the evidence confirms Wade Rome's testimony. There is no ledger that recorded transactions, including exchanges, of precious metals as they occurred. Nor is there an itemized description of precious metal transactions on the Defendants' taxes (although a lump sum casualty loss is claimed in 2014) (Exhibit 121). Accordingly, the UST has met the initial burden regarding precious metals purchased by the Defendants.

14. The burden then shifted to the Defendants. The Defendants did not meet their burden of explaining why they did not maintain records regarding the disposition of precious metals. Wade Rome suggested that no such records should be required because the precious metals were purchased with after-tax money, but even if this explanation made sense, the Defendants never paid taxes on the proceeds of the employment lawsuit that were used to purchase it precious metals (Wade Rome testimony of 2/21/17; Exhibit 121).  It was also was suggested by Harvey Plaskov that buyers of gold often operate in a secretive manner. (Indeed, Mr. Plaskov himself kept no records). But this is not a viable excuse in a bankruptcy proceeding (Harvey Plaskov Testimony on 2/23/17). Accordingly, the Court should deny the Defendants' discharge for failure to keep records regarding the disposition of precious metals.

15. Likewise, the UST met the initial burden of showing that the Defendants did not keep adequate recorded information regarding the money that Wade Rome spent on illegal activities (Exhibit 1). In testimony, Wade Rome identified $10,000 that he spent on drugs and prostitutes (Wade Rome testimony 2/22/17, examination by Bomkamp). He also testified that there were other

---

[1] Specifically, Wade Rome said "I think that in the instance of bullion or coins or whatever, you're buying them with post tax dollars, so dollars that have already been declared. I don't know why you'd be required to . . . ." Wade Rome testimony on 2/21/17.

7

unidentified transactions through 2014 that he did not record and did not even remember (Wade Rome testimony 2/22/17, examination by Bomkamp). Although the evidence in the record includes some evidence of expenditures on addiction treatment, Wade Rome made clear that not all of his expenditures on illegal activity could be documented (or remembered). Accordingly, the UST met its initial burden with regard to Wade Rome's admitted lack of record keeping in connection with his expenditures on illegal activity.

16. The burden then shifted to the Defendants. No serious attempt was made to provide a satisfactory explanation regarding Wade Rome's illegal expenditures. Accordingly, the Court should deny the Defendants' discharge for failure to keep records regarding Wade Rome's illegal activities.

17. In addition, the UST met the initial burden of showing that the Defendants did not record the $1,142,697.59 received on October 15, 2012 on their taxes in 2012 or in any subsequent year. The 2012 taxes were prepared by Kathleen Rome (Kathleen Rome testimony 2/22/17), or any tax year thereafter (Exhibits 22 and 121). This is despite the fact that the settlement agreement leading to the payment contemplated that the settlement was taxable income, despite the fact that the personal injury component of Defendants' claim was eliminated on partial summary judgment, and despite the fact that the parties consistently described the litigation as an employment lawsuit in testimony (Exhibits 22, 107 and 121).[2] Accordingly, the UST met the initial burden with regard to Defendants' failure to keep recorded information on their taxes.

18. The burden then shifted to Defendants. The Defendants did not meet their burden of explaining their lack of recorded information regarding their taxes. Kathleen Rome testified that an unidentified person told Wade Rome and that Wade Rome told her that the proceeds of the employment lawsuit were tax exempt (Kathleen Rome testimony 2/22/17). This explanation

---

[2] The exclusion of lawsuit proceeds from taxable income is limited to injuries "on account of personal *physical* injuries or *physical* sickness." 18 U.S.C. § 104(a)(2) (emphasis added).

involves two layers of hearsay and originates with an unidentified party. The Court should therefore find it unsatisfactory. Kathleen Rome also suggested that the settlement proceeds were excluded from income as a personal injury settlement. But when asked to clarify, she could not do so and launched into and extended non-sequitur (Kathleen Rome testimony 6/13/17). Even more significantly, there are no invoices in the record regarding these alleged expenditures despite the numerous other invoices provided in the case. Therefore, the Court should therefore find this explanation unsatisfactory as well. The Court may also consider that Defendants have a past history of failure to report taxable payments. Karen Kessler testified that she was she struggled to receive unemployment and lost Social Security disability benefits due to the Defendants' failure to report employment-related taxes (Karen Kessler testimony 6/13/17). Accordingly, the Defendants' discharge should be denied for failure to keep recorded information on their taxes.

19.  Finally, the UST met its initial burden of showing that the Defendants did not keep or record information regarding cash transactions. Kathleen Rome testified that she would withdraw large amounts of cash from the bank – in one case $10,000 – and spend the money on household and legal expenses (Kathleen Rome testimony 2/22/17). Kathleen Rome testified that she did not track the amount of cash that she was holding at any given time (Kathleen Rome testimony 2/22/17). Accordingly, the UST met its initial burden with regard to Defendants' failure to keep or record information regarding cash expenditures.

20. The burden then shifted to the Defendants. The Defendants did not meet their burden of explaining their lack of recorded information regarding their cash expenditures. The UST acknowledges that the Defendants did produce a large number of receipts that partially document the Defendants' use of cash. However, for the reasons set forth below in Part E, these records provide only a partial and unsatisfactory accounting of Defendants' missing cash. Accordingly, the


Court should find the Defendants' explanation regarding the lack of records in connection with cash transactions to be unsatisfactory and deny the Defendants' discharge under section 727(a)(3).

**C.    Defendants' Discharge Should be Denied Pursuant to Section 727(a)(4)(A)**

21.    Count III of the complaint objects to Defendants' discharge pursuant to 11 U.S.C. § 727(a)(4)(A). Section 727(a)(4)(A) provides "[t]he court shall grant the debtor a discharge, unless . . . the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." "To warrant denial of discharge based on a debtor's false oath or account, the objecting party must prove the false oath or account was (1) fraudulently made and (2) related to material fact. Fraudulent intent can be inferred from examining the totality of circumstances surrounding the debtor's bankruptcy case." In re Sanchez, No. 6:13-bk-14818-KSJ, 2014 WL 7184461, at *1 (Bankr. M.D. Fla. Dec. 18, 2014) (internal citations omitted).

22.    The evidence that justifies denial of discharge under section 727(a)(4)(A) is the same evidence that justifies denial of discharge under 727(a)(2)(B). As described above, the Defendants committed a false oath when they failed to list miscellaneous personal property, including furniture, on their Schedules or transfers of miscellaneous personal property on their Statement of Financial Affairs. As described above, the Defendants committed a false oath when they failed to list precious metals (and safes) on their bankruptcy Schedules. Finally, as described above, the Defendants falsely represented on their Statement of Financial Affairs that B&H Auto Sales was the owner of their Honda Odyssey when this was impossible based upon the dates B&H Auto Sales operated and held a dealer's license. These were false oaths made with fraudulent intent.

23. Defendants also committed false oaths by failing to list income from "yard sale" items and counterfeit purse sales at Macon Payday Finance in 2013 and 2014 on their Statement of Financial Affairs. Karen Kessler testified that money earned from these transaction went into "Kat's Bag" (i.e., Kathleen Rome's bag) and that these payments were the Defendants' personal money (Karen

Kessler testimony 6/13/17). Karen Kessler testified that she personally bought a counterfeit purse in 2013 (Karen Kessler testimony 6/13/17). The Defendants had a large inventory of counterfeit purses as set forth in Exhibit 105. Defendants' Statement of Financial Affairs, Question 1, lists zero dollars from these activities. Fraudulent intent is clear with regard to the sale of counterfeit purses because selling counterfeit goods is an illegal business and the Defendants had good reason not to list the source of this income.

**D.   Defendants' Discharge Should be Denied Pursuant to Section 727(a)(4)(D)**

24. Count IV of the complaint objects to Defendants' discharge pursuant to 11 U.S.C. § 727(a)(4)(D). Section 727(a)(4)(D) provides "[t]he court shall grant the debtor a discharge, unless . . . the debtor knowingly and fraudulently, in or in connection with the case . . . withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs." To prevail under section 727(a)(4)(D), the UST must show that an officer of the estate requested specific documents and that the Defendants actively concealed those documents. See Turner v. Moeritz (In re Moeritz), 317 B.R. 177, 186 (Bankr. M.D. Fla. 2004).

25.  The UST has met its burden of showing that the Defendants knowingly and fraudulently withheld from an officer of the estate recorded information. Specifically, the chapter 7 trustee testified that during the inspection of the Defendants property, the chapter 7 trustee discovered fraudulent documents (previously described) in the glove box of the Honda Odyssey (Carla Musselmann testimony 2/22/17).  When the chapter 7 trustee requested the documents in the glove box of the Nissan Titan, access was refused, presumably because those documents were also fraudulent (Carla Musselmann testimony 2/22/17). In addition, the chapter 7 trustee testified that when she requested photographs of the contents of the interior of the Defendants' home, she was not provided with photographs of safes, which were present at the time of inspection of the

Defendants' home (Carla Musselmann testimony 2/22/17). Given the evidence that the Defendants were concealing precious metals, the UST has met its burden that the withholding of these photographs was knowing and fraudulent.

**E.  Defendants' Discharge Should be Denied Pursuant to Section 727(a)(5)**

26. Count V of the complaint objects to Defendants' discharge pursuant to 11 U.S.C. § 727(a)(5). Section 727(a)(5) provides that "[t]he court shall grant the debtor a discharge, unless . . . the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."

27. To prevail under 11 U.S.C. § 727(a)(5), the UST must prove that "(1) at a time not too remote from the commencement of the case, the debtor owned a substantial, identifiable asset, (2) that on the date of filing the bankruptcy petition, the debtor no longer owned the particular asset; and (3) that the debtor was unable to satisfactorily explain the non-existence of the asset when called upon to do so." Rancourt at *5 (citing In re Walden, 380 B.R. 883, 894 (Bankr. M.D. Fla. 2008)). "If the party objecting to the discharge establishes the basis for its objection, the burden shifts to the debtor to 'explain satisfactorily the loss.'" Rancourt at *5 (citing Fasolak, 381 B.R. at 782). "A satisfactory explanation is one that convinces the judge." Rancourt at *5 (citing Chalik v. Moorfield (In re Chalik), 784 B.R. 616, 619 (11th Cir. 1984)). A creditor (or presumably the UST) is not required to call upon the debtor to explain a loss of assets prior to filing an adversary proceeding. Hawley v. Cement Industries, Inc. (In re Hawley), 51 F.3d 246, 248-49 (11th Cir. 2014).

28. The UST successfully shifted the burden to the Defendants to explain their loss of money, precious metals, and miscellaneous personal property. First, with regard to money, the Defendants received a wire transfer of $1,142,697.59 into their jointly-owned Florida Bank of Commerce bank account ending in 5012 on October 15, 2012 (Exhibit 1). According to the Schedules, the money

12

was gone by the Petition Date. Second, with regard to precious metals, the Defendants purchased $577,152 worth of precious metals shortly after receiving the lawsuit settlement (Exhibit 108). According to the Schedules, the precious metals were gone by the Petition Date. Finally, with regard to miscellaneous personal property, the Defendants moved into their residence in 2013 with an 18-wheeler full of personal property (Terry Brown testimony 6/12/17). In addition, the Defendants' landlord, Sandy Trudeau, testified that Wade Rome identified property stored in a warehouse in close proximity to the Petition Date (Sandy Trudeau testimony 6/14/17). According to the Schedules, the Defendants no longer had this property as of the Petition Date. As such, the UST has met its initial burden of demonstrating that the Defendants had identifiable assets within a reasonable time from the Petition Date and that the Defendants no longer had those assets as of the Petition Date.

29. The burden then shifted to the Defendants. The Defendants did not meet their burden of explaining the whereabouts of their miscellaneous personal property, including antique furniture. The only explanation in the record is Wade Rome's admission (saying "No! No!" while nodding vigorously) that he hid property of the bankruptcy estate. This is not a satisfactory explanation. As such, the Court should deny the Defendant's discharge pursuant to section 727(a)(5).

30. With regard to money and precious metals, the Defendants Kathleen Rome attempted to explain the dissipation of these assets through use of a demonstrative aid labeled "Evidence Summary." Although the demonstrative aid and Kathleen Rome's testimony provided some information about the Defendants' dissipation of assets, the demonstrative aid provided an insufficient explanation in the following ways:

    a. The demonstrative aid calculated "depreciation" of gold and silver by reference to difficult-to-interpret charts. It is unclear how depreciation accounts for the loss of the Defendants' assets and it is unclear the method that was used;

    b. The demonstrative aid extrapolated representative living expenses without explaining the methodology employed;

    c. The demonstrative aid extrapolated representative expenses associated with Wade Rome's alleged drug addiction without explaining the methodology employed;

    d. The demonstrative aid inferred losses of cash and gold based upon complaints filed by the chapter 7 trustee despite the fact that the Defendants' never revealed this information prior to trial;

    e. Many receipts included in the demonstrative aid were illegible; and

    f. The demonstrative aid inferred loss of gold based upon an entirely non-itemized schedule attached to the Defendants' 2014 tax return.

In light of these deficiencies in methodology, legibility, and based upon the bad faith inherent explaining transfers of gold and money for the first time at trial, and in light of the Defendants' overall course of conduct, the Court should find that the Defendants have failed to sufficiently explain their loss of assets and deny the Defendants discharge pursuant to section 727(a)(5).

## CONCLUSION

31. The benefit of the bankruptcy discharge is reserved for the honest but unfortunate debtor. The Defendants' overall course of conduct demonstrates that they should not receive a bankruptcy discharge. The evidence shows that the Defendants concealed property, set forth false oaths on their bankruptcy Schedules and Statement of Financial Affairs, failed to keep records, and, when asked to explain what became of their missing property, failed to do so. For these reasons the Court should deny the Defendants' bankruptcy discharge under 11 U.S.C. § 727(a)(2), (3), (4) and (5).

    WHEREFORE, the UST requests that the Court deny the Defendants' discharge pursuant to 11 U.S.C. § 727(a)(2), (3), (4) and (5) and take such other action as the Court deems appropriate.

DATED:  August 4, 2017 RESPECTFULLY SUBMITTED,

   /s/  Scott Bomkamp
Scott Bomkamp, Trial Attorney
Indiana Bar No.: 28475-49
Office of the UST
U.S. Department of Justice
400 W. Washington St., Suite 1100
Orlando, FL 32801
Telephone No.:   (407) 648-6301, Ext. 150
Facsimile No.:   (407) 648-6323
Email: scott.e.bomkamp@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 4, 2017 I have caused a true and correct copy of the foregoing Brief to be served on all parties appearing electronically via CM/ECF.

   /s/   Scott Bomkamp
Scott Bomkamp, Trial Attorney