# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| In re:<br><br>WADE MARTIN ROME &<br>KATHLEEN MALONEY ROME,<br><br>    Debtors.<br>_____/ | Case No. 6:15-bk-02498-KSJ<br><br>Chapter 7 |
| UNITED STATES TRUSTEE – ORL 7/13, 7,<br><br>    Plaintiff,<br><br>v.<br><br>WADE MARTIN ROME and KATHLEEN MALONEY ROME,<br><br>    Defendants.<br>_____/ | Adv. Proc. No. 6:15-ap-00130-KSJ<br>*Lead Adversary* |
| JOHN BELTRAMO, as trustee of the JOHN W. BELTRAMO REVOCABLE TRUST DATED FEBRUARY 27, 1992,<br><br>    Plaintiff,<br><br>v.<br><br>WADE MARTIN ROME and KATHLEEN MALONEY ROME,<br><br>    Defendants.<br>_____/ | Adv. Proc. No. 6:15-ap-00131-KSJ |

ROBERT THOMAS, individually and as assignee, beneficiary or successor to ROBERT THOMAS III, TRUSTEE OF THE ROBERT THOMAS REVOCABLE TRUST DATED APRIL 6, 1989, FREDERICK LAUFER, individually and as assignee, beneficiary, or successor to FEDERICK LAUFER, M.D., and LAURA WALSH AS TENANTS BY THE

1

ENTIRETIES, and BRIAN KAUFMAN, individually and as assignee, beneficiary or successor to RICHARD F. KAUFMAN and NORMA V. KAUFMAN, TRUSTEES OF KAUFMAN REVOCABLE LIVING TRUST DATED JANUARY 30, 1996,

    Plaintiffs,

v.

WADE MARTIN ROME,

    Defendant.
_____/

Adv. Proc. No. 6:15-ap-00132-KSJ

CARLA P. MUSSELMAN, Chapter 7 trustee for the estate of WADE MARTIN ROME and KATHLEEN MALONEY ROME, ROBERT THOMAS, individually and as assignee, beneficiary or successor to ROBERT THOMAS III, TRUSTEE OF THE ROBERT THOMAS REVOCABLE TRUST DATED APRIL 6, 1989, FREDERCK LAUFER, individually and as assignee, beneficiary, or successor to FEDERICK LAUFER, M.D., and LAURA WALSH AS TENANTS BY THE ENTIRETIES, and BRIAN KAUFMAN, individually and as assignee, beneficiary or successor to RICHARD F. KAUFMAN and NORMA V. KAUFMAN, TRUSTEES OF KAUFMAN REVOACBLE LIVING TRUST DATED JANUARY 30, 1996,

    Plaintiffs,

v.

WADE MARTIN ROME and KATHLEEN MALONEY ROME,

    Defendants.
_____/

Adv. Proc. No. 6:16-ap-00066-KSJ

2

                    Case 6:15-ap-00130-KSJ    Doc 130    Filed 08/18/17    Page 3 of 8

## DEFENDANTS' REPLY TO
## UNITED STATES TRUSTEE'S MEMORANDUM OF LAW

Defendants, WADE MARTIN ROME ("Wade") and KATHLEEN MALONEY ROME ("Kathleen") (collectively, "Defendants"), file this Reply to the United States Trustee's Memorandum of Law (Doc 128, "UST's Memo"), stating as follows:

### No Evidence to Support Denial of Discharge as to Kathleen Rome

All evidence presented at trial, and all evidence cited in the UST's Memo, relates to the actions of Wade, not Kathleen. Even if everything the UST alleges were true (which it is not), discharge still should not be denied as to Kathleen. Furthermore, to the extent Plaintiffs are relying on allegations from 2012 or before, these are not within the relevant time period for § 727 claims.

### Plaintiffs Failed to Carry Their Burden

Under the burden-shifting framework for § 727 claims,[1] Plaintiffs have not carried their initial burden of showing that Defendants made false statements in connection with their bankruptcy case, or that there are missing records without justification that make it impossible to ascertain Defendants' financial condition, or that there are missing assets that Defendants have failed to explain satisfactorily. Plaintiffs have the initial burden of showing that Defendants failed to maintain or preserve adequate records, and that such failure makes it impossible to ascertain the debtor's financial condition.[2] The UST does not assert that the missing records make it impossible to ascertain Defendants' financial condition, nor is there any evidence in the record establishing that it is impossible to ascertain Defendants' financial condition from the records that are available.

---

[1] *See J. Schoenherr Constr. Co. v. Rancourt & McGrath (In re Rancourt)*, Adv. P. No. 6:11-ap-233-KSJ, 2014 WL 504082, at *2, 3, 5 (Bankr. M.D. Fla. Feb. 7, 2014) (citing *In re Fasolak*, 381 B.R. 781, 792 (Bankr. M.D. Fla. 2007) and *In re Hawley*, 51 F.3d 246, 249 (11th Cir. 1995)).

[2] *Rancourt*, 2014 WL 504082, at *3; *see also Meridian Bank v. Alten*, 958 F.2d 1226, 1232 (3d Cir. 1992); *Mercantile Peninsula Bank v. French (In re French)*, 499 F.3d 345, 354-57 (4th Cir. 2007); *In re Dennis*, 330 F.3d 696, 703 (5th Cir. 2003); *In re Sullivan*, 492 B.R. 348 (Bank. M.D. Ga. 2013).

<pre>                                                 3</pre>

Plaintiffs *attempted* to present evidence showing that Defendant's records were inadequate through Oscher's Expert Report. But Oscher's Expert Report <u>does not say that the missing records make it impossible to ascertain **Defendants'** financial condition</u>; rather, Oscher's Expert Report asserts that missing records are related to Macon Finance Company and other Rome **entities**, and "[a]s a result . . . I am unable to prepare a conclusion of the Rome **entities'** financial operations and assets they have control over."[3]

Plaintiffs complain that records of Macon Finance Company (a/k/a MPL) have not been produced; however, Macon Finance was owned by Phil Prewitt (Defendants' former attorney, who is currently a sitting judge in Missouri) and Rome Enterprises.[4] The unrebutted testimony shows that the documents related to Macon Finance are in the possession of Judge Prewitt, who testified that he did not have documents responsive to the subpoena. Prewitt Depo. at 18:14 – 19:5.

Even if Plaintiff had met their initial burden, so that the burden would shift to Defendants, Defendants have produced thousands of pages of records, justified why certain records are missing,[5] and satisfactorily explained the loss of their assets. The ultimate burden of proof is on Plaintiffs. Fed R. Bank. P. 4005. Plaintiffs have failed to carry their burden.

---

[3] Page 8 of Exhibit 108 (page 7 of Oscher's Report).

[4] Under the circumstances here, an alleged lack of records for Macon Finance Company (a/k/a MPL) or any of the other entities owned by Rome Enterprises should not serve as a basis to deny Defendants' personal discharge. *See Phillips v. Nipper (In re Nipper)*, 186 B.R. 284, 289 (Bankr. M.D. Fla. 1995) (explaining that "a debtor's discharge cannot be denied where production of corporate financial records is inadequate because the corporation is a separate entity"); *Buckeye Retirement Co. v. Bishop (In re Bishop)*, 420 B.R. 841 (Bank. N.D. Ala. 2009) (concluding that records of entities owned by the debtor were not necessary to ascertain the debtor's personal financial condition, and therefore could not serve as a basis to deny the debtor's personal discharge) (quoting *Krohn v. Cromer (In re Cromer)*, 214 B.R. 86, 99 (Bankr. E.D.N.Y. 1997) (stating that "an individual debtor's failure to maintain books and records of a corporation is not in itself sufficient to deny that debtor a discharge under § 727(a)(3) because an objection to discharge must be based on the debtor's failure to produce books and records which depict the individual debtor's finances, not that of his or her corporation")); *JP Morgan Chase Bank v. Hobbs (In re Hobbs)*, 333 B.R. 751, 758, 851-52 (Bankr. N.D. Tex. 2005). Plaintiff have not carried their burden of showing that records related to separate entities owned by Rome Enterprises are necessary to ascertain Defendants' personal financial circumstances.

[5] Defendants' Memo at 5-6, 9-10 explains that the unrebutted testimony of Wade and Kathleen (confirmed by Dan Lambert) shows that significant records were lost as a result of a fire, a hard drive crash, and in the process of moving in chaotic circumstances. Nevertheless, it is undisputed that Defendants have produced thousands of pages of records, which make it possible to ascertain Defendants' financial condition. Under the circumstances, Defendants have justified the absence of the records that are missing.

**Sandi Trudeau's Testimony Is Not Credible and
Does Not Constitute Sufficient Evidence to Shift the Burden to Defendants**

Plaintiffs' arguments rely almost entirely on the testimony of Sandi Trudeau, which they characterize as "credible" and "forthright." UST's Memo at 4. To the contrary, Ms. Trudeau's testimony was <u>not</u> forthright or credible, as she refused to respond fully to discovery (asserting her Fifth Amendment privilege against self-incrimination, from which a negative inference should be drawn), she attempted to peer into the Courtroom while she was sequestered (resulting in a Bailiff having to reprimand her during trial), and during her testimony she seemed to be looking at Plaintiffs' counsel for guidance on how to respond to questions on cross-examination. Far from being "forthright," her behavior was erratic, evasive, and combative.[6]

Moreover, the UST ignores a major motive for Ms. Trudeau to lie: spite and revenge. It is clear from her testimony that Ms. Trudeau blames Defendants, and Wade in particular, for the tax authorities discovering her homestead tax fraud.[7] As a result of this, and because Wade owes her money, she is angry at Defendants and desires to inflict harm on them. Ms. Trudeau's spite and desire for revenge toward Defendants is demonstrated by her filing of a criminal complaint against Wade, which was voluntarily dismissed by the prosecutor due to lack of evidence. The fact that Ms. Trudeau was willing to file a frivolous criminal complaint against Wade shows the

---

[6] Contrary to the UST's assertions, there is <u>no evidence</u> that Ms. Trudeau was the least bit intimidated by Wade, and in fact the evidence shows that she was not intimidated by him. *See* Doc. 95-4 in Adv. Proc. No. 6:15-ap-00132-KSJ (Exhibit 62 (page 31 of 117) (e-mail from Ms. Trudeau to Wade Rome dated August 22, 2015, stating, "Of course, <u>you still owe me for the entire time you have lived there</u> and repairing the pool screen, etc. <u>I know bankruptcy won't stop you from paying me</u>" (emphasis added)). This is not the type of statement that would be made by a person who is intimidated.

[7] Ms. Trudeau attempted to defraud the taxing authorities by making it appear that she was living at the house that Wade rented from her. *See* Exhibit 62 (page 113 of 171) (e-mail from Ms. Trudeau to Wade dated March 12, 2013, stating, "For the last two years" she kept changing her forwarding address temporarily, and "changing my address permanently has gotten me into all kinds of trouble with the insurance company, the State regarding my homesteading, etc."); Exhibit 62 (page 112 of 171) (e-mail from Ms. Trudeau to Wade dated March 14, 2013, regarding homestead issues); Doc. 95-25 in Adv. Proc. No. 6:15-ap-00132-KSJ (page 117 of 171) (e-mail from Ms. Trudeau to Wade dated January 19, 2015, regarding tax information from her mortgage company). Ms. Trudeau testified that, eventually, the taxing authorities discovered that Ms. Trudeau was not living at the address where she was claiming homestead, resulting in the loss of her homestead tax benefit, so that she was required to pay back taxes, plus penalties.

lengths to which she is willing to go to exact her pound of flesh.[8] Her testimony was motivated by spite and her desire for revenge, making her unbelievable and utterly lacking in credibility.[9]

### The Property in the Warehouse Was Disclosed and Was Abandoned by the Trustee

Strangely, Plaintiffs complain about supposed personal property in a warehouse. Plaintiffs ignore the fact that <u>the warehouse and all of the items in it were in fact disclosed in Defendant's bankruptcy Schedules</u>.[10]   <u>The Trustee abandoned the property in the warehouse</u>. It is difficult to understand why Plaintiffs are complaining about assets that were in fact disclosed, and which were abandoned by the Trustee.[11]

### No Evidence of Improper Tax Treatment of F&S Settlement

Plaintiffs mischaracterize the evidence regarding the F&S settlement. *See* UST's Memo at 8. During Wade Rome's testimony, he <u>did</u> identify the tax professional and testified that Defendants relied on his advice for the tax treatment of the F&S settlement.[12] This testimony is

---

[8] Furthermore, Ms. Trudeau's testimony simply does not make any sense. For example, she asserts that Wade offered to pay rent in gold. If that is so, why didn't she accept the gold, given that she acknowledged that she collects gold, and Defendants owed her money for rent? It makes no sense that she would have declined to accept payment in gold merely because it was of a type that she does not prefer. Ms. Trudeau's testimony was simply not believable.

[9] Similarly, Ms. Trudeau's friend, Terry Brown, was not credible. He testified that his vision is impaired, so that he is legally required to wear glasses while driving. His testimony, that he saw Wade riding motorcycles and removing certain personal property from the residence, is not credible, given Mr. Brown's relationship to Ms. Trudeau, and given that he could not state or identify exactly what items were removed, and he supposedly saw these things from a distance while he was not wearing his glasses. The testimony of these witnesses is not credible and is not sufficient to shift the burden to Defendants.

[10] The only testimony on this issue is from Ms. Trudeau, who is utterly lacking in credibility for the reasons explained above, and Ms. Trudeau's friend, Terry Brown, who is equally lacking in credibility. Furthermore, the UST seems to make a big issue out of the fact that Wade used an 18-wheeler to unload personal property when he moved into the residence rented from Ms. Trudeau, but the UST ignores the fact that the Chapter 7 Trustee testified that she also used an 18-wheeler when she took possession of Defendants' personal property after the filing of the petition.

[11] The UST also asserts that Defendants made a false oath by omitting income from a yard sale. UST's Memo at 10-11. It appears that the UST may have misunderstood this testimony on this issue. Keela Ratliff, Janie Fortenberry, and Mary Kessler testified that the yard sale occurred in 2012—**prior to the relevant time period required to be disclosed in the Schedules or SoFA**. *See* Ratliff Depo. at 46:14-15 (stating that the sale was about a year before Defendants left); and Kathleen's testimony that they left in 2012. Nevertheless, these witnesses testified that Defendants segregated the funds from the yard sale, so that Macon Payday Finance and Defendants both received what they were due from the yard sale of their respective property.

[12] Defendants testified to this, not for the truth of the matter asserted (i.e., that the settlement was in fact nontaxable), but for the purpose of showing that this was the advice they received.

uncontroverted and unrebutted. Plaintiff *attempted* to present evidence to the contrary, through the testimony of their expert, Oscher; however, he admitted during his testimony that he was unqualified to render an opinion on the tax treatment of the settlement, and he had not even reviewed the settlement agreement prior to rendering his opinion on it.

### Vehicles Were Disclosed and Turned Over to Trustee

Plaintiffs complain that they do not like how the vehicles (the Honda Odyssey and Nissan Titan) were titled. However, Plaintiffs ignore the fact that the vehicles were disclosed in Defendants bankruptcy Schedules. Plaintiffs also ignore the fact that the vehicles were turned over to the Trustee. It is unclear what else Plaintiffs think Defendants should have done with respect to the vehicles. Plaintiffs simply refuse to accept the explanation of Defendants and Flamuri Brandon Zeciri[13] regarding the vehicles. If Defendants had claimed that they owned the vehicles in their Schedules (as Plaintiffs argue that should have), Plaintiffs would be complaining about that, and would claim that the vehicles are titled to B&H and belong to B&H.

WHEREFORE Defendants, WADE MARTIN ROME and KATHLEEN MALONEY ROME, pray the Court will deny all relief sought in the above-styled adversary proceedings, enter judgment in favor of Defendants, and for such other relief that the Court deems just and equitable.

Respectfully submitted this 18th day of August, 2017.

          */s/ Jeffrey S. Ainsworth*
JEFFREY S. AINSWORTH, ESQ.
Florida Bar No. 60769
BransonLaw, PLLC
1501 E. Concord St.
Orlando, FL 32803
Phone: 407-894-6834
Fax: 407-894-8559
E-mail: Jeff@Bransonlaw.com
Attorneys for Defendants

---

[13] Mr. Zeciri is a neutral third party who had no motive to lie. His testimony confirms Defendants' explanation with respect to the vehicles.

7

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 18th day of August, 2017, a true and correct copy of the foregoing has been provided electronically to Cheryl Thompson, Esq. (cthompson@thompsonlawpractice.com), Scott Bomkamp, Esq. (Scott.E.Bokamp@usdoj.gov), Bradley M. Saxton, Esq. (bsaxton@whww.com) via the Court's CM/ECF Filing System, and to all other recipients registered to received electronic notice.

                                                                                               */s/ Jeffrey S. Ainsworth*
                                                                                               JEFFREY S. AINSWORTH, ESQ.
                                                                                               Florida Bar No. 60769